UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

KENDALL LYNN,

        Plaintiff

v.

GATEWAY UNIFIED SCHOOL DISTRICT and DOES 1-50, inclusive,

        Defendants.
_____/

No. 2:10-CV-00981-JAM-CMK

**AMENDED**
**MEMORANDUM AND ORDER**

Defendant Gateway Unified School District's motion for dismissal, sanctions and/or for disqualification of Plaintiff's counsel Robert A. Thurbon, Jr., and the law firm of Thurbon & McHaney filed November 9, 2011, (Dkt # 46), came on regularly before this court for hearing on December 7, 2011.  John P. Kelley, Esq., appeared as attorney for the Defendant, and Jacqueline S. McHaney, Esq., appeared as attorney for Plaintiff.  Having read and considered the memorandum submitted by counsel, the attachments thereto, the pleadings and the arguments of counsel, the Court now renders the following memorandum, decision and order.

PDF created with pdfFactory trial version www.pdffactory.com

**FACTUAL BACKGROUND**

**A. THE PLAYERS**

The Gateway Unified School District (hereinafter "School District") is a K-12 public school district in Shasta County.  In January 2009, the Superintendent was John Strohmayer, the Assistant Superintendent/Chief Business Official was Jody Thulin and the Director of Technology was Kendall Lynn.  In February 2009, Thulin submitted a letter to the School Board claiming Strohmayer had engaged in improper financial practices.  Thulin's claims were investigated by the Board and found meritless.

In the summer 2009, John Strohmayer retired, Robert Hubbell was hired to replace him as Superintendent.  Hubbell had no prior affiliation with the School District.  Hubbell determined Thulin lacked the qualifications and experience to be Chief Business Official and recommended to the School Board she be reassigned to a teaching position.  The Board agreed.  Thulin refused the position and instituted civil litigation in Shasta County Superior Court claiming whistleblower retaliating.  (The Thulin case).  Attorney Robert A. Thurbon, Jr., of the Thurbon and McHaney law firm filed the Thulin case.

When Hubbell took over as Superintendent on July 1, 2009, he informed Lynn there would likely be cuts in the Technology Department, including potentially Lynn's position.  Lynn immediately consulted with Thurbon, having been referred to him by Thulin.  The initial consultation between Lynn and Thurbon was July 7, 2009.

On August 19, 2010, Hubbell recommended to the Board Lynn's position be eliminated for economic reasons.  Both Lynn and Thurbon were present at this Board meeting.  Thurbon spoke out against Lynn's layoff.  The Board approved the

PDF created with pdfFactory trial version www.pdffactory.com

recommendation and eliminated the Director of Technology position. This resulted in Lynn being issued a layoff notice. Pursuant to the Education Code, Lynn was given 45-days notice of his layoff so it was not effective until October 6, 2009; however, Lynn went out on medical leave starting August 24, 2009. Lynn's last day of working was August 21, 2009. Having turned in a note from his doctor stating he would be on medical leave for six weeks, Lynn never returned from his medical leave following August 21, 2009, before his layoff became effective. Believing his layoff was the result of racial discrimination, Lynn is black, Lynn hired Thurbon to pursue this racial discrimination lawsuit in Federal Court.

### B. EMAIL THEFT

Late on August 26, 2009, or early morning on August 27, 2009, Lynn made a copy of all of the emails on the School District's server. The server contained the emails of every employee in the entire School District for at least four months. The total number of emails Lynn copied was 39,312. Lynn did not have permission or authority to take these emails, which are School District property. Lynn did not tell anyone he made this copy. The evidence points to Lynn making this copy from home since he was on sick leave, or he returned to the School District office late at night when no one else was present to make this copy. Lynn then started going through these emails looking for ones he hoped would support his racial discrimination case.

As early as October 12, 2009, Lynn started forwarding some of the emails to Thurbon to try and bolster his discrimination case. The emails were sent to Thurbon both electronically and in hard copy (printed) format.

Thurbon has claimed in court documents he researched whether Lynn was entitled to possess the emails before he himself took possession of them. This

PDF created with pdfFactory trial version www.pdffactory.com

research has never been identified by Thurbon. After doing this alleged research, Thurbon asked Lynn to send all the emails to his office. Thurbon took possession of the electronic emails in June 2009 and had them loaded onto his office computer. About the same time, Lynn told Thurbon there were emails he thought would help Thulin's case.

In Thulin's case, Lynn's deposition was taken on June 23, 2010. At the time of Lynn's deposition, the School District did not know of his email theft, but emails were discussed for other reasons. Lynn testified all emails on the School District's server were School District property. Lynn also acknowledged he was only allowed to access other employees' emails at the School District if he was given specific permission from the Superintendent. This understanding is confirmed by both former Superintendents Hubbell and Strohmayer, the School Board's technology use policy and the School District's expert. Lynn acknowledged in his deposition he was only asked by a Superintendent to check other employees' emails on two occasions, neither of those occasions would have encompassed the emails the School District later learned he had stolen.

Thurbon was present at Lynn's deposition and heard about Lynn's limited authority to access emails. Four days later, on June 29, 2010, Thurbon had Thulin come to his office and review the electronic emails. Thulin spent four hours searching through the emails looking for ones she thought would be relevant to her case. Thulin printed off 147 pages of emails ("Thulin emails") and gave them to Thurbon. Two of those emails were then used by Thurbon to oppose the School District's motion for summary judgment in the Thulin case.

On June 29, 2010, Thulin was deposed and discussed emails which the School

PDF created with pdfFactory trial version www.pdffactory.com

District had not released and which were clearly protected by the attorney-client privilege. Thurbon was present at the deposition, heard her testify about the emails that were clearly protected by the attorney-client privilege, but did nothing to stop the deposition. The next day, June 30, 2010, the School District received Thulin's supplemental discovery responses which included the 147 Thulin emails. It was this date, June 30, 2010, the School District realized there had been a security breach in its email system and Thulin and Thurbon had obtained emails the School District did not release. Lynn's involvement at this point was suspected, but unknown by the School District.

### C.  STATE LITIGATION OVER THE EMAILS

With Thulin's production of 147 pages of emails the School District had not released, some clearly covered by the attorney-client privilege, the School District sought and was given an emergency temporary restraining order preventing the use, discussion and dissemination of the emails in the Thulin case. On August 9, 2010, the Shasta County Superior Court granted a permanent injunction requiring Thurbon and Thulin to return the 147 pages of emails and all copies in their possession and not to use or discuss the emails for any purpose. The Court held the School District demonstrated Thulin "did not lawfully obtain the emails." The Court noted Thulin did not produce any evidence or explanation of how the documents were obtained. Even though Thurbon, Thulin and Lynn all provided declarations in opposition to the injunction motion, none of them revealed how the emails had been obtained.

Despite the injunctive order stating the emails and their contents were not to be used for any purpose, Thurbon, in the Thulin case, initiated discovery requests that were obviously aimed at trying to re-obtain the Thulin emails. Meanwhile, the School

PDF created with pdfFactory trial version www.pdffactory.com

District's counsel sent numerous meet and confer letters to Thurbon to try and ascertain how many emails were in Thurbon's possession and how they had been acquired. Thurbon refused to provide any information.

Based on Thurbon's continued use of the emails to drive litigation, a motion to dismiss the litigation and a motion to disqualify Thurbon were brought in the Thulin case. In opposing this motion, Thurbon submitted a lengthy declaration revealing for the first time how Lynn had taken the emails. The Shasta County Superior Court granted the motion to disqualify Thurbon and removed him from the Thulin case. The Court denied the motion to dismiss finding Thulin herself was innocent of the theft and should not be held accountable for Lynn and Thurbon's conduct. Instead, the Court granted an evidentiary sanction precluding use of the Thulin emails at trial. A month later, Thurbon filed a motion for reconsideration of both orders and this time submitted a declaration from Lynn which described how Lynn had taken the emails without permission.

The School District filed a new lawsuit in the Shasta County Superior Court, *Gateway v. Thurbon, Thulin and Lynn ('Gateway")* to seek return of all the emails. The School District then sought and obtained an injunctive order in this new litigation all the emails taken by Lynn had to be returned to the School District, whether in electronic or paper format. Further, Thurbon, Thulin and Lynn were ordered not to use, discuss or disseminate the emails for any purpose and were ordered to return all documents summarizing or discussed the contents of the stolen emails. In granting this injunctive relief, the Court once again found Lynn had not obtained the emails through a lawful process.

This new injunctive order was entered by the Shasta County Superior Court on

PDF created with pdfFactory trial version www.pdffactory.com

November 8, 2010. Thurbon, Thulin and Lynn proclaimed compliance with this order in early December, 2010, by handing over their electronic copy of the emails. However, Thurbon did not return any paper copies of any emails to the School District's counsel or turn over any documents summarizing or quoting from the emails. Therefore, inquiries were made by the School District's counsel of Thurbon regarding compliance with the order. In a letter dated December 9, 2010, Thurbon stated he had fully complied with the Court's order and represented "the only documents we ever printed off or reviewed were the documents that were dealt with extensively in the Thulin litigation." This representation was inaccurate.

In the present case, on October 11, 2010, Lynn served a cryptic Rule 26 disclosure identifying "emails" in support of his case. Meet and confer letters were sent by the School District's counsel asking Thurbon to identify these emails. When no response was given, the School District noticed Lynn's deposition and asked these documents be produced.

At Lynn's February 17, 2011, deposition, Lynn produced 227 pages of documents, including 115 pages of emails. These 115 pages have since been known as the "Lynn emails." During the deposition Lynn acknowledged all 115 pages of emails were part of the 39,312 emails he had taken from the School District. He further testified he had printed some of these emails and given them to Thurbon for use in his discrimination case at least 15 months previous. Lynn claims these emails are racial jokes that support his racial discrimination case.

In the State *Thulin* and *Gateway* cases, the School District sought and obtained an order to show cause re contempt against Thurbon for violation of the state injunctive orders pertaining to these emails. After a hearing, the Shasta County

PDF created with pdfFactory trial version www.pdffactory.com

Superior Court Judge Stephen H. Baker found five intentional violations of these order and sanctioned Thurbon for contempt in the amount of $2,500.00.

### D.  THE CONFIDENTIAL NATURE OF THE EMAILS

When the 39,312 emails were returned to the School District by Lynn, pursuant to the injunctive order in the *Gateway* case, the School District hired attorney Richard Clopine to review the emails.  Mr. Clopine read every single email and found that approximately 11-12% of the emails, about 4,300, are subject to various privileges and privacies.  These privileges include the attorney-client privilege, the work-product doctrine, protection of student records under the California Education Code and Federal Law, personnel records, disciplinary records of both students and employees of the School District, test scores on grades of students, as well as individual education plans of special education students.  In addition, some of the these emails have been confirmed by the sender and/or recipient as protected by the attorney-client privilege.  None of these privileges were waived prior to Lynn taking the emails.

### E.  THURBON AND LYNN HAVE MADE INCONSISTENT STATEMENTS ABOUT THE ACQUISITION AND USE OF THE EMAILS

Both Thurbon and Lynn were deposed in the Thulin case, as well as this Federal Court matter about the acquisition and use of the emails.  Both have also submitted at least two declarations in the State cases on this subject.  Some of this sworn testimony contradicts other statements by the same witness, other statements have been proven false based on other evidence.

There is inconsistency in Lynn and Thurbon's testimony on the date Lynn downloaded the emails.  Lynn claimed in deposition he only made a "personal copy" of the email server once.  Assuming this is true, then the date he downloaded the emails

PDF created with pdfFactory trial version www.pdffactory.com

was either late on August 26, 2009, or early morning on August 27, 2009.  However, Lynn claimed in deposition he never accessed the School District's server after August 25th.  Further, Lynn testified he downloaded the emails while at the School District office and still working by inserting a "flash drive" into one of the office computers; however, Lynn's last day physically working was August 21, 2009.  Lynn called in sick starting on August 24, 2009, and never returned to work before his layoff became effective in October.  Thus on August 26th or 27th Lynn either had to download the emails from home or sneak into the School District office after hours to take the emails.

The date the emails were taken also contradicts Lynn's motive for doing so.  According to a declaration Lynn filed in State court, he copied the emails in July because he was concerned emails were being deleted and he would be accused of a security breach.  This is repeated in Thurbon's State court declaration wherein he claims Lynn made the backup copy immediately after an outside consultant was asked by Hubbell to look at emails.  Thurbon's declaration states Lynn made the backup copy in anticipation for being fired off "for cause" which then would result in an evidentiary hearing about misconduct by Lynn.  Thurbon continues the emails were no longer needed once Lynn was laid off for economic reasons, but Lynn kept the emails anyway.  But all of this is a inaccurate.  Lynn did not copy the emails in July, nor did Lynn download the emails in anticipation of being fired "for cause."  Instead, Lynn downloaded the emails after the Board voted to eliminate his position for economic reasons and after he no longer was working for the School District.

**ANALYSIS**

For taking from the School District 39,312 emails, the School District asks

PDF created with pdfFactory trial version www.pdffactory.com

Lynn's lawsuit be dismissed, or in the alternative for an evidentiary sanction prohibiting the use of the emails in this litigation, and for an award of attorney's fees. The School District also asks Thurbon and the law firm of Thurbon & McHaney be disqualified from further work on this case for violation of criminal and ethical standards.

When a party wrongfully obtains documents outside the normal discovery process, a number of different types of sanctions are available.  These include dismissal of the action, the compelled return of all documents, restrictions regarding the use of the documents at trial, disqualification of counsel and monetary sanctions. *Fayemi v. Hambrecht & Quist, Inc.,* 174 F.R.D. 319, 324-27 (S.D.N.Y.1997).  Courts have considerable discretion in choosing the appropriate sanction under its inherent authority and may, for example, dismiss claims, enter default judgment, and award attorney's fees and costs.  *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 461-62 (4th Cir.1993); see also *Glynn v. EBO Corp.*, 2010 WL 3294347 (D.Md.2010).

### A.  THE EMAILS WERE STOLEN.

The School District has presented uncontroverted evidence Lynn made a copy of the School District's entire email server on or about August 26, 2009.  This copy of the email server captured 39,312 emails transmitted by, from or between School District employees.  According to the School District's internet use policy, the Superintendent or the Superintendent's designee can review emails without prior notification to the employee.  Former Superintendents Hubbell and Strohmayer have submitted declarations stating Lynn was only designated to review emails on two specific occasions, neither one of which would have encompassed the 39,312 emails which Lynn downloaded.  While Lynn as Director of Technology had access to the

PDF created with pdfFactory trial version www.pdffactory.com

email server and the ability to review employee emails, this ability does not translate into the unfettered right to exercise that authority.  Even if Lynn had the right as Director of Technology to review other employee's emails, this did not give him the right to take and keep a copy of the emails at a time when his employment was essentially over.

Lynn has argued the emails are non-privileged, non-exempt public records available to any person in the State via California's Public Records Act, Government Code § 6250 et seq.  He also argues the key inquiry is not the manner of the acquisition of the emails, but rather their non-privileged, non-exempt status.  The Court disagrees.  First, Lynn did not obtain the emails through California's Public Records Act, but rather took them without making a request as required by Government Code section 6253.  Further, as shown by attorney Clopine's declaration, at least 11% of the emails taken by Lynn are covered by various privileges, including the attorney-client privilege.  Finally, the manner of acquisition of a document is important as one cannot obtain even non-exempt public documents through illegal conduct.  See *Williams v. Superior Court* (1978) 81 Cal.App.3d 330, 345-346; *People v. Dolbeer* (1963) 241 Cal.App.2d 619, 623.

In taking the emails without permission, Lynn possibly violated 18 U.S.C. § 2701 which provides it is a federal offense to intentionally exceed authorization to access electronic communication.  The Court also finds Lynn possibly violated California Penal Code section 502; knowingly accessing and without permission take, copy and/or make use of any data from the computer, computer system, or computer network.

**B.  SANCTIONS AGAINST LYNN.**

MEMORANDUM AND ORDER
11

PDF created with pdfFactory trial version www.pdffactory.com

The School District has asked the litigation be dismissed for Lynn's theft of the emails, or in the alternative for an evidentiary sanction the emails be excluded from trial, and for $43,315.00 in attorney's fees for the investigation of the theft as associated with this federal case.  The Court has much discretion in choosing the appropriate sanction.  The Court declines to dismiss the litigation as public policy strongly favors having cases decided on their merits.  The Court will issue an evidentiary sanction the emails are not to be used by Lynn in any way at trial.  Regardless of whether Lynn has obtained the emails through his theft or through a public records request, Lynn is prohibited from attempting to introduce into evidence any of the 39,312 emails Lynn took from the School District.  Further, neither Lynn nor his counsel shall attempt to introduce any evidence, including cross-examining any witnesses, about the contents of these emails.

The Court at this time declines to award the attorney's fees asked for by the School District as there is insufficient evidence presented with the motion as to how these fees were incurred.  This portion of the motion is denied without prejudice to the School District refilling the request with better documentation as to how the fees were incurred.

**C.  DISQUALIFICATION OF THURBON AND HIS FIRM.**

The Court grants the motion to disqualify Thurbon and the law firm of Thurbon and McHaney from further participation in this case effective 5:00 p.m., December 7, 2011.  The Court agrees with the defense position Thurbon took possession of the 39,312 emails from Lynn knowing Lynn had taken them from the School District illegally.  In doing so, Thurbon possibly violated California Penal Code section 496, receiving stolen property.  Thurbon then created a conflict of interest by showing those

PDF created with pdfFactory trial version www.pdffactory.com

emails to his other client Thulin to support her litigation and, in doing so, possibly violated California Penal Code section 502, making it a felony to use information from a computer database without permission.  Thurbon continued to stubbornly hold on to most of these emails even after the first State Court injunctive order finding the Thulin emails had been wrongfully obtained and it was unlawful for Thurbon and Thulin to have possession of them.  Thurbon then gave the emails back to Lynn, after the first state court injunctive order, despite knowing the court's finding the emails had been stolen.  Thurbon's conduct arguably suppressed of evidence of a crime in violation of his ethical duties.  See *People v. Meredith* (1981) 29 Cal.3d 682, 690-695; *People v. Lee* (1970) 3 Cal.App.3d 514, 526; *State Bar Formal Opinion* 1986-89.  Then, in the *Thuiln* case, when faced with a motion to dismiss and a motion to disqualify Thurbon, Thurbon violated his legal and ethical duties to Lynn be revealing Lynn's crime in a declaration.  After those motions were granted in part and Thurbon was disqualified in the *Thulin* case, Thurbon filed a motion for reconsideration and supported it with a declaration from Lynn setting forth Lynn's theft.  In revealing Lynn's theft of the emails, Thurbon violated his ethical duty of confidentiality owed to Lynn in order to try and assist his other client, Thulin.  California Rules of Professional conduct, Rule 3-100, which the Eastern District has adopted as the professional standards of conduct, Local Rule 180(e), requires an attorney to maintain the confidences of his client. Communication between an attorney and a client as they relate to a completed crime may not be disclosed.  *People v. Singh*  (1932) 123 Cal.App.3d 365, 369-371; *People v. Meredith* (1981) 29 Cal.3d 682, 689-694.  Upon learning of Lynn's taking of the emails, Thurbon should have immediately advised Lynn to obtain a criminal attorney and advised Lynn of his rights against self-incrimination.   Instead, Thurbon's

MEMORANDUM AND ORDER
13

PDF created with pdfFactory trial version www.pdffactory.com

disclosure of Lynn's theft has opened Lynn up to criminal prosecution as well as adverse consequences in this federal case.

While Thurbon claims he informed Lynn of the consequences of disclosing the theft and Lynn agreed to waive the conflict of interest, this is a conflict Lynn cannot waive. *People ex. rel. Dept. of Corrections v. SpeeDee Oil Change Systems, Inc* (1999) 20 Cal.4th 1135, 1147. Thus Thurbon violated his duty of loyalty to Lynn, violated his ethical duties to maintain his client's confidence, and proceeded to represent Thulin and Lynn despite a conflict of interest, suppressed evidence of a crime, receiving stolen property and concealed stolen property from its rightful owner. This warrants disqualification.

Because Thurbon is a member of a small law firm and other members of his firm have participated in various aspects of the *Thulin* and *Gateway* cases and this litigation, the Court disqualifies from further work on this action not only Thurbon, but all attorneys and employees of the law firm of Thurbon & McHaney.

The scope of this disqualification applies to all official and unofficial work on behalf of Lynn related to this case. Not only is Thurbon and his law firm prohibited from officially representing Lynn in this case, they are prohibited form providing any legal representation, advice, or performing any work on behalf of Lynn in this federal case. This includes drafting, preparing or typing any documents or motions on Lynn's behalf, researching or advising Lynn on any aspect of this case or in any fashion working behind the scenes to assist Lynn with the prosecution of this case. Further, Thurbon and his firm are precluded from filing any appeal or any court document on behalf of Lynn. There are four narrow exceptions to the disqualification: (1) the Thurbon & McHaney law firm has been ordered to draft and submit to the Court an

MEMORANDUM AND ORDER
14

PDF created with pdfFactory trial version www.pdffactory.com

order on the motion for summary judgment which was also heard on December 7, 2011, (2) Lynn's current address, phone number and other contact information shall be supplied to the Court and the School District's counsel, (3) Thurbon and his firm are not precluded from seeking appellate review of this disqualification order so long as it is filed in their individual capacity and not as a representational capacity of Lynn; and, (4) they may assist Kendall Lynn in searching for a new attorney to pursue this litigation.

### D. OBJECTIONS TO EVIDENCE:

The School District objected to Exhibit "B" to Thurbon's declaration as constituting hearsay. This exhibit is the deposition of James Fruuen taken in the Thulin case. As a state court deposition, it is hearsay. Pursuant to Federal Rules of Evidence, Rule 804(b)(1), prior testimony, even under oath, can only be offered as evidence if the witness is unavailable and the party against whom the testimony is offered had an opportunity to develop the testimony. *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147, 164 (3rd Cir.1995). As there has been no effort by Lynn to show these elements have been met, the objection to the James Fruuen deposition is sustained.

### CONCLUSION

For the reasons stated above, the motion to dismiss for Lynn's misconduct in taking the emails is hereby DENIED. Defendant's request for an evidentiary sanction prohibiting Lynn from using the emails, using their contents, or attempting to introduce any evidence about the contents of these emails at trial is hereby GRANTED. The motion to disqualify attorney Robert A. Thurbon, Jr., and the law firm of Thurbon and McHaney from further representation of Plaintiff Kendall Lynn in this litigation is hereby GRANTED. Defendant's request for attorney's fees for the investigation of

PDF created with pdfFactory trial version www.pdffactory.com

Lynn and Thurbon's conduct is DENIED WITHOUT PREJUDICE.

   IT IS SO ORDERED.

DATED: 12/14/2011

                              /s/ John A. Mendez
                              JOHN A. MENDEZ
                              UNITED STATES DISTRICT JUDGE

PDF created with pdfFactory trial version www.pdffactory.com